## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES J. EHRMAN, | ) |
| Plaintiff, | ) |
| v. | )     Civ. Action No. 04-01970 (RCL) |
| UNITED STATES, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiff's motion [13] for judgment on the

pleadings and the defendants' cross-motion [14] for summary judgment.  Plaintiff James J.

Ehrman, a former Foreign Service officer at the United States Department of State

("Department"), originally filed an agency-level grievance after being designated for selection

out of the Foreign Service.  After the Department denied the grievance and the Foreign Service

Grievance Board (hereinafter "FSGB" or "Board") dismissed the grievance appeal, Ehrman filed

the present action requesting judicial review of the FSGB's decision.  Ehrman argues that the

FSGB acted arbitrarily and capriciously in dismissing his grievance for lack of jurisdiction, in

violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706 (2000), the Foreign

Service Act of 1980 ("FSA"), 22 U.S.C. §§ 3901 *et seq.* (2000), and his due process rights under

the Fifth Amendment to the United States Constitution.  The defendants, the United States and

Secretary of State Condoleezza Rice,[1] assert that the FSGB acted reasonably and afforded the

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d)(1), former Secretary of State Colin
L. Powell, a co-defendant in the original complaint, has been substituted by Condoleezza Rice in
her official capacity as Secretary of State.

plaintiff adequate due process, and that the FSGB's decision to dismiss the grievance is

supported by the administrative record.  Upon consideration of the parties' filings, the applicable

law and the entire record herein, this Court concludes that the FSGB's decision was, in part,

arbitrary and capricious.  Therefore, Ehrman's motion for judgment on the pleadings[2] shall be

granted in part and denied in part without prejudice and the defendants' motion for summary

judgment shall be denied without prejudice.  The matter shall be remanded to the FSGB for

reconsideration in accordance with this Memorandum Opinion.

## I. BACKGROUND

*A. Foreign Service Structure*

The FSA provides detailed procedures for the evaluation, promotion, and retirement

(voluntary and involuntary) of Foreign Service officers.  *See* 22 U.S.C. §§ 4001-4008.  At least

every year, each foreign service officer is evaluated by his supervisors in an Employee

Evaluation Report.  Based on these evaluations, a selection board evaluates each officer on the

basis of relative performance within his or her class for promotions, pay raises, awards, low-

ranking,[3] or for referral to a Performance Standards Board ("PSB").  (22 U.S.C. § 4002; Compl.

¶¶ 23-24; Admin. R. at 75.)  The PSB, in turn, evaluates the officer's performance over a period

of time and may consequently choose to designate him for "selection out of" (*i.e.*, termination of

employment with) the Foreign Service.  (Compl. ¶ 26.)

---

[2]  Pursuant to Federal Rule of Civil Procedure 12(c) and as explained *infra* Section
II.A.1, this Court has treated Ehrman's motion for judgment on the pleadings as a Rule 56
motion for summary judgment.

[3]  Low-ranking "is an indication to the member and the Department of problem areas or
inadequacies in needed skills, performance, and/or potential."  (Admin. R. at 75.)  Selection
boards must meet certain numerical targets when designating Foreign Service members for low-
ranking; however, they have limited discretion and must follow specific criteria when doing so.
(Admin R. at 56, 75.)

The Foreign Service assigns officers to various skill codes or "cones", and in 1997, three smaller skill codes – Narcotics, EST (Environment/Science/Technology), and Labor – were merged into the four generalist cones – Administrative, Economic, Consular, and Political. (Admin. R. at 59, 78.)  In connection with this merger of skill codes, the Department instituted a six-year transition period for affected Foreign Service members, which laid out procedures for selecting a new skill code, if necessary, and offered certain guidelines for how selection boards would evaluate affected employees during this time.  (Admin. R. at 58-63, 75, 78.)

*B. Factual Background*

The plaintiff, James Ehrman, joined the Foreign Service in 1965 and was employed by the Department of State.  (Compl. ¶ 9.)  After serving in a number of posts, Ehrman was promoted into the Senior Foreign Service as a Counselor class officer in 1996.  (Admin. R. at 76.)  Between 1994 and 1996, the last three years that Ehrman competed for promotion into the Senior Foreign Service, the annual selection boards evaluated him in the Labor competition category.  (Admin. R. at 77.)  After his promotion, he competed in the Political competition category.  (Admin. R. at 77.)

In 1999, 2000, and 2001, the annual selection boards low-ranked Ehrman.  (Admin. R. at 77.)  He was consequently referred for PSB review and the 2001 PSB designated Ehrman for selection out of the Foreign Service.  (Admin. R. at 3.)  In its decision, the PSB noted that he was low-ranked by several promotion panels between 1998 and 2001.  (Admin. R. at 3.)  The PSB also relied on specific comments by his reviewing officers going back to 1996, dealing with his performance in general and with some labor-specific aspects of it.  (Admin. R. at 3-6.)

On August 23, 2002, Ehrman, appearing *pro se*, initiated a grievance for an agency-level review of his designation for separation by the 2001 Performance Standards Board.  (Admin. R.

at 7.)  Ehrman alleged that the PSB's decision exhibited "institutional bias against labor" causing the PSB to improperly evaluate his years of service in the Labor field.  (Admin. R. at 7-8.)  The Department denied Ehrman's grievance on September 9, 2002.  (Admin. R. at 12.)  On September 23, 2002, Ehrman filed an appeal with the FSGB, requesting an opportunity to conduct discovery, a hearing, and interim relief suspending his separation for the duration of the proceedings.  (Admin. R. at 1-2.)  In an October 18, 2002 order, the FSGB accepted jurisdiction of the appeal (Admin. R. at 37) but denied Ehrman's request for interim relief, reasoning that he would suffer no irreparable harm from separation and that there was little likelihood that he would prevail on the merits of the appeal (Admin. R. at 39).

Following that order, Ehrman attempted to conduct discovery, seeking statistics about Labor officers in the Foreign Service and how their performance compared to that of other Foreign Service officers.  (Admin. R. at 46.)  The Department provided some documents in response to Ehrman's request, but refused to provide others, reasoning that the information Ehrman was seeking was not related to his grievance.  (Admin. R. at 54-57.)  Ehrman responded by filing a motion to compel the Department to respond to his interrogatories.  (Admin. R. at 80-85.)  More communication between Ehrman and the Department followed, in which the Department contested most of the allegations that Ehrman used as a basis for his discovery requests.  (Admin. R. 86-124.)  In part, Ehrman claimed that as a Labor officer he should have been reviewed in the Labor skill code, and that he should have been protected from low-ranking after the Labor skill code was abolished.  (Admin. R. at 88, 90.)  The Department disputed Ehrman's claims by providing selective documentation which referred to Ehrman's Political skill code at several points in time after 1988.  (Admin R. at 92-93.)  On August 26, 2003, the FSGB issued an order in response to Ehrman's motion to compel, in which it ruled that the Department

4

had discharged its obligations.  (Admin. R. at 131.)  Without analyzing Ehrman's claims, the

FSGB quoted several statements from the Department's submissions and concluded that

Ehrman's discovery requests were not relevant to his grievance appeal.  (Admin. R. at 4.)  In

response to Ehrman's letter reiterating his claims, the FSGB issued a new order stating that it

had found no good cause to revisit its August 26, 2003 discovery order.  (Admin. R. at 150.)

On January 2, 2004, the FSGB issued a decision dismissing Ehrman's appeal, reasoning

that it had no jurisdiction over this matter because Ehrman had challenged the judgment of the

PSB, which was not grievable under 22 U.S.C. § 4131(b)(2).  (Admin. R. at 183.)  Ehrman

submitted a response to the FSGB's decision, which the FSGB treated as a motion for

reconsideration and denied.  (Admin. R. at 203.)  Ehrman, who to this point had appeared *pro se*,

retained counsel and filed an amended motion for reconsideration on February 27, 2004.

(Admin. R. at 206-258.)  The FSGB subsequently denied this motion on May 17, 2004, relying

on the discretion granted to it by 22 C.F.R. § 910.1.  (Admin. R. at 287.)  Ehrman then initiated

the present action for judicial review of the FSGB's decision.

## II. DISCUSSION

*A. Legal Standards*

### 1. Ehrman's Motion on the Pleadings

Ehrman filed a motion on the pleadings pursuant to Federal Rule of Civil Procedure

12(c).  Rule 12(c) provides that if "matters outside the pleadings are presented to and not

excluded by the court," then the motion is treated as one for summary judgment in accordance

with Rule 56.  *See* FED. R. CIV. P. 12(c).  On February 28, 2005, the defendants filed the Foreign

Service Grievance Board Record of Proceedings ("Admin. R.") [8] with this Court.  Only a small

portion of this record was attached to Ehrman's complaint and thus incorporated into the

pleadings pursuant to Rule 10(c).  *See* FED. R. CIV. P. 10(c); *see also* 5C CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1371, at 276 (3d ed.

2004) (noting that in accordance with Rule 10(c), a court can consider exhibits attached to the

pleadings and materials referred to therein without converting a Rule 12(c) motion to one for

summary judgment).  However, both parties heavily relied on the administrative record in

making their case before this Court and this Court has considered parts of the record not

mentioned in the pleadings in its deliberations.  This Court must consequently treat Ehrman's

motion as one for summary judgment and therefore this Court has applied the Rule 56 summary

judgment standard to both parties' dispositive motions.

    *2. Summary Judgment Standard*

    Under Rule 56, a court must grant summary judgment if the record demonstrates "that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

on the undisputed facts as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material

fact is one that is determinative of the claim or a defense and could thus affect the outcome of

the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All inferences drawn

from the record must be viewed in light most favorable to the non-moving party, *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and any factual dispute that

does not constitute a genuine issue of material fact is immaterial for summary judgment

purposes, *Anderson*, 477 U.S. at 248.  The burden is on the movant to make the initial showing

of the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986); *see id.* at 325 ("The burden on the moving party may be discharged by

[demonstrating] . . . that there is an absence of evidence to support the nonmoving party's

case.").  The non-moving party must support its position by providing more than "a scintilla of

evidence"; the quantum of evidence must be such that a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 252.  The movant is consequently entitled to a judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When, as in this case, both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard. *See Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968) ("Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified . . . ."); *Nuzzo v. FBI*, 1996 WL 741587, *1 (D.D.C. 1996) ("When both parties in a cause of action move for summary judgment, each party must carry its own burden.").

### 3. Standard of Review

Pursuant to section 1110 of the FSA, Ehrman "may obtain judicial review of a final decision of the Secretary or the Board on any grievance" in a federal district court, provided that the filing deadlines are met.  22 U.S.C. § 4140(a).  Because the APA governs this Court's review FSGB decisions, *see* 22 U.S.C. § 4140(a) (incorporating 5 U.S.C. § 706), this Court must "set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).  The scope of review under this standard is a narrow and highly deferential one. *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Contrary to its traditional role, the reviewing district court sits as an appellate tribunal whose authority is limited to reviewing the

questions of law decided by the FSGB.  *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).

While a court "must defer to the Board's decision . . . if reasonable," *United States v. Paddack*, 825 F.2d 504, 514 (D.C. Cir. 1987), it must also subject the decision to a "thorough, probing, in depth review" and conduct a "searching and careful [inquiry into the facts]." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971).  A reviewing court may not "substitute its judgment for that of the agency," but must determine whether the agency considered the relevant data and whether its ultimate decision reflects "reasoned decision-making."  *Prof'l Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1220 (D.C. Cir. 1983); *see also Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983) (limiting a court's role to determining whether the agency "has considered the relevant factors and articulated a rational connection between the facts found and the choice made").  Accordingly, if the agency's conclusion is not supported by a reasonable explanation based on the full administrative record, it is the court's responsibility to set it aside.  *See Petroleum Commc'ns, Inc. v FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994).  Regardless of whether it may agree with the FSGB's holding, this Court must restrict itself to determining whether the FSGB's decision was reasonable and supported by the weight of the entire record.

B. *FSGB's Decision of January 2, 2004*

Ehrman alleges that the FSGB's decision of January 2, 2004 (hereinafter "Decision") does not withstand the scrutiny of the APA's "arbitrary and capricious" standard.  Specifically, Ehrman argues that the FSGB's findings and ultimate decision were arbitrary and capricious in holding that the FSGB lacked jurisdiction over Ehrman's claims and finding that Ehrman was

not in the Labor skill code.[4]  (Compl. 10-11; Mot. J. Pleadings 3.)  Although the FSGB's

Decision thoroughly summarized the parties' positions, its findings reflect a selective reliance on

the Department's conclusory statements in the administrative record and contradict the FSGB's

earlier assertions in the administrative proceeding.  While the FSGB's ultimate decision may be

valid, this Court cannot affirm it because the FSGB did not consider all relevant evidence in the

record and failed to provide a reasonable explanation for some of its holdings.

Ehrman filed his agency-level grievance pursuant to the FSA, 22 U.S.C. § 4131, which

allows a Foreign Service member to challenge a "violation, misinterpretation or misapplication

of applicable law, regulation, or collective bargaining agreement or published post or agency

policy affecting the terms and conditions of the employment or career status of the Member."  22

U.S.C. § 4131(a)(1)(B).  The FSA also lists some matters that a Foreign Service member cannot

challenge as a grievance.  These include PSB judgments, *see* 22 U.S.C. § 4131(b)(2) (noting that

the term "grievance," as used in this section, does not include "the judgment of a selection board

established under section 4002 of this title, a tenure board established under section 3946(b) of

this title, or any other equivalent body established by laws or regulations which similarly

evaluates the performance of members of the Service on a comparative basis"), unless the

judgment is procedurally flawed, *see* 22 C.F.R. § 901.18(c)(6) (clarifying that while the

judgment of a PSB is not a valid grievance, "alleged procedural violations of law, regulation or

collective bargaining agreement . . . are grievable").  A member also may not challenge "[t]he

---

[4]  The second count alleged in Ehrman's complaint was that the FSGB's denial of interim
relief also violated the APA as arbitrary and capricious.  (Compl. 11.)  However, Ehrman's
motion for judgment on the pleadings indicates that he has withdrawn this claim.  (Mot. J.
Pleadings 3-4 n.1.)

content of published agency policy which is not contrary to law, regulation, or collective bargaining agreement."  22 C.F.R. § 901.18(c)(6).

On initial review of Ehrman's grievance, the Department held that his claims were not grievable because they "challenge[d] broad department policies . . . and the judgment of the 2001 PSB."  (Admin. R. at 13.)  However, in its October 18, 2002 order, the FSGB accepted jurisdiction of the grievance appeal.  (Admin. R. at 37.)  The FSGB stated that Ehrman's allegation of "'misapplication by the personnel system of Department policy' . . . echoed the statutory language" of section 1101 of the FSA (22 U.S.C. § 4131) and "[i]n order to prevail before this Board[, Ehrman] must establish that the agency has violated law, regulation, published policy, or collective bargaining agreement."  (Admin. R. at 37, 39.)  Thus, the order allowed Ehrman to substantiate the claims made in his grievance appeal through discovery, by identifying the Department policy in question and those Department actions that misapplied this policy.

In its Decision, which followed the completion of discovery, the FSGB held that Ehrman had failed to establish that his claims constituted a grievable action.  (Admin. R. at 182.)  The FSGB found that Ehrman had challenged the judgment of the PSB, as well as State Department policy, both non-grievable under the FSA.  (Admin. R. at 183.)  However, in doing so, the FSGB failed to consider some of the issues raised by Ehrman during discovery.  In restating Ehrman's claims, the FSGB noted Ehrman's claim that "he did not exercise his option to change from the labor skill code but was 'shifted' to the political competition category anyway."  (Admin. R. at 180.)  The FSGB also noted Ehrman's contention "that he was inappropriately denied the option to continue to compete for the limited promotion opportunities in his labor specialization and

was denied the six-year protection against low ranking that Other Labor Officers enjoyed."

(Admin. R. at 180.)    In regard to two specific claims made by Ehrman, the FSGB stated:

> In supplemental submissions grievant has argued: (1) that he was inappropriately denied the option to compete for the limited promotion opportunities in his labor specialization and was denied the six-year protection against low-ranking that other Labor Officers enjoyed, and (2) that he was denied a fair opportunity to choose his career path in 1997 when the Labor Skill Code was merged into others.
>
> These arguments were not advanced at the agency level and cannot be raised for the first time in a grievance appeal.  They do not constitute a grievance for jurisdiction.

(Admin. R. at 184).  The defendants characterize the excerpt above by stating that "[t]he FSGB squarely addressed [Ehrman's] assertions, first reiterating Plaintiff's arguments and then finding that it lacked jurisdiction."  (Opp'n Pl.'s Mot. Summ. J. 7.)  Not only is the defendants' argument in this regard conclusory, but the FSGB's justification for denying Ehrman's arguments contradicts the FSGB's own order of October 18, which gave Ehrman an opportunity to substantiate his claim of "misapplication by the personnel system of Department policy." (Admin. R. at 37.)  The defendants fail to recognize that these claims by Ehrman are not new claims (Opp'n Pl.'s Mot. Summ. J. 7), but rather provide support to the claim the FSGB recognized it had jurisdiction over, namely "the misapplication by the personnel system of Department policy" (Admin. R. at 37).

In addition, and contrary to the FSGB's implication, Ehrman first made these assertions during discovery, *before* he filed supplemental submissions to the FSGB.  The record shows that in response to several documents produced by the Department during discovery, Ehrman argued that he should have been evaluated in the Labor skill code, and as such should have been protected from low ranking during the six-year transition period after the abolition of the Labor

sub-cone.  (Admin. R. at 88.)  Ehrman claimed that his low-ranking by successive selection

boards and consequent referrals to successive PSBs, which resulted in his eventual designation

for selection out, were a result of the Department's violation of Department policy that granted

Labor officers protection against low-ranking.  (Admin. R. at 90.)  However, in the "Discussion

and Findings" section of the Decision, the FSGB ignored these aspects of Ehrman's claim and

characterized his grievance appeal as solely challenging the 2001 PSB's criticisms of his work

and the Department's policy regarding labor issues.  (Admin. R. at 183).

        The FSGB should have addressed Ehrman's specific allegations before reaching its

conclusion that Ehrman had failed to present a grievable action.  In its order of October 18,

2002, the FSGB noted that by alleging a misapplication of Department policy, Ehrman

"appear[ed] to be making a claim that, *if substantiated*, constitutes a valid basis for filing a

grievance."  (Admin. R. at 37 (emphasis added).)  This order allowed Ehrman to conduct

discovery in order to substantiate the claims made in his grievance appeal.  The central claim of

Ehrman's grievance appeal was "the misapplication by the personnel system of Department

policy" (Admin. R. at 1), and the FSGB's Decision acknowledged Ehrman's arguments in

support of this claim (Admin. R. at 179-80).  After it accepted jurisdiction over Ehrman's

grievance appeal on the grounds that his central claim was valid, if substantiated, the FSGB

acted  in an arbitrary and capricious manner by failing to address on the merits his arguments in

support of that claim and summarily disregarding them.  *See Petroleum Commc'ns, Inc.*, 22 F.3d

at 1172 (noting that a court must "ensure that the agency has 'examine[d] the relevant data and

articulate[d] a satisfactory explanation for its action.'" (quoting *State Farm*, 463 U.S. at 43)).

The FSGB may be correct in its analysis of those claims made by Ehrman that it explicitly

addressed; however, by not providing a reasonable explanation for its summary dismissal of

those claims that on their face support the statutory basis of Ehrman's grievance appeal, the FSGB acted arbitrarily and capriciously within the meaning of the APA.

The defendants argue that the FSGB exercised its discretion not to remand the case for agency level review of Ehrman's claims.  (Opp'n Mot. J. Pleadings 8.)  This argument fails because it also assumes that these were "new issues" raised after the FSGB had issued its opinion.  The regulation the defendants rely on, 22 C.F.R. § 910.1, is indeed a discretionary one, but it is only relevant once a case has been closed.  *See* 22 C.F.R. § 910.1 ("The Board *may* reconsider . . . .") (emphasis added)..  Because Ehrman first raised these issues in the discovery phase of the proceedings, relying on the FSGB's order of October 18, 2002, and the FSGB was aware of these issues when making its Decision (Admin. R. at 179-80), the FSGB should have addressed his claims on the merits.

Having come to this conclusion, this Court is not in a position to determine the legitimacy of the remainder of the FSGB's Decision.  Pursuant to the standard of review under Rule 56(c), this Court must draw all reasonable inferences from the record in favor of the non-moving party.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587**.**  The record is unclear whether Ehrman should have been protected from low-ranking pursuant to Department policy, and the FSGB failed to make a determination in this regard.  The FSGB's findings, to a great extent, hinge on whether selection boards should have granted Ehrman protection from low-ranking, which is a genuine issue of material fact for the purposes of each party's motion.  Therefore, the defendants' motion for summary judgment is denied without prejudice and Ehrman's motion for judgment on the pleadings is granted in part, as to those FSGB findings deemed arbitrary and capricious by this Court, and denied without prejudice in all other respects.

The proper remedy is for this Court to remand the matter to the FSGB for further proceedings consistent with this Memorandum Opinion. *See PPG Indus.*, 52 F.3d at 365 ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). The FSGB's expertise in Foreign Service personnel matters, *see, e.g.*, *Paddack*, 825 F.2d at 514 (underscoring the FSGB's familiarity and experience with matters pertaining to the Foreign Service), should enable it to resolve the parties' opposing contentions regarding Ehrman's skill code that have significant implications for their claims. The FSGB must determine whether Ehrman was indeed in the category of Foreign Service officers protected from low-ranking under Department regulations and whether the selection boards that evaluated him violated Department policies that called for protection from low-ranking for certain Labor officers. By addressing factual disputes, such as Ehrman's claim that "[p]ersonnel [was] also confused over the differing requirements for obtaining the labor skill code and for promotion over the senior threshold" (Admin. R. at 181), or the Department's contention "that grievant's primary skill code was always political . . . [and h]e was not eligible to be reviewed as a Labor Officer within the parameters of 97 State 174607" (Admin. R. at 181), the FSGB will have gone a long way toward curing the defects in its original decision.

In its proceedings on remand, the FSGB must take care to ensure that the proper party carries the burden under the standards set forth in 22 C.F.R. § 905.1. If the FSGB finds that Ehrman's claims relating to his skill code and protection from low-ranking have merit and the resulting procedural errors were a substantial factor in Ehrman's separation from the Foreign Service, the burden will shift to the Department to establish, by a preponderance of the evidence,

14

that it would have separated Ehrman from the Foreign Service absent these errors.  *See* 22 C.F.R.

§ 905.1(b)-(c).  In its response to Ehrman's amended motion for reconsideration, the Department

noted that it could have made additional arguments regarding the substantiality of the impact of

any procedural errors on its decision to separate Ehrman from the Foreign Service, but was

"never required to do so."  (Admin. R. at 261-62.)  Depending on the FSGB's findings, the

Department may indeed be required to do so, and it will be up to the FSGB to evaluate the

validity of any such arguments.

While this Court's Opinion is not a reflection of the legitimacy of either party's claims or

the FSGB's ultimate holding, this Court is constrained by the APA guidelines for judicial review

of agency actions, and the FSGB's Decision fell short of the standard required for this Court to

affirm it.  After the FSGB issues a revised decision consistent with this Opinion, the parties are

free to renew their dispositive motions before this Court.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that the FSGB's decision was, in part,

arbitrary and capricious.  Accordingly, and for the reasons stated herein, the plaintiff's motion

[13] for judgment on the pleadings is hereby granted in part and denied in part without prejudice.

The defendants' cross-motion [14] for summary judgment is hereby denied without prejudice.

This matter is hereby remanded to the FSGB for further proceedings consistent with this

Memorandum Opinion.

A separate Order corresponding to this Memorandum Opinion has been issued.


Signed by Royce C. Lamberth, United States District Judge, April 11, 2006.